2004 ND 157

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Ryan C. MITZEL, Defendant and Appellant.**

No. 20030359.

Supreme Court of North Dakota.

Aug. 4, 2004.

Cynthia M. Feland, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Tom P. Slorby and Eric P. Baumann, Slorby Law Office, Minot, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Ryan Mitzel is appealing from a South Central Judicial District Court criminal judgment and conviction upon a conditional plea of guilty for possession of marijuana with intent to deliver, a class B felony, and possession of drug paraphernalia, a class A misdemeanor. Mitzel argues the district court erred in denying his motion to suppress evidence that he claims was obtained in violation of his Fourth and Fifth Amendment rights. We reverse and remand, concluding the district court erred in denying Mitzel's motion to suppress.

I

[¶ 2] On February 15, 2003, Bismarck Police Officers Mike McMerty and Jason Stugelmeyer went to Mitzel's apartment to investigate a report of a domestic dispute. While in the apartment, Officer McMerty followed Mitzel down the hall toward a back bedroom and observed the odor of marijuana. Mitzel later admitted to smoking marijuana. Officer McMerty asked Mitzel for permission to search the bedroom of the apartment, but Mitzel denied the request. Mitzel was arrested for possession of marijuana. He later consented to a search of the bedroom, and officers found marijuana and marijuana paraphernalia.

[¶ 3] On February 16, 2003, Mitzel was charged with possession of drug paraphernalia and with possession of marijuana with intent to deliver within 1000 feet of a

school. On May 15, 2003, Mitzel moved to suppress the evidence found in his apartment. On July 8, 2003, a suppression hearing was held. At the hearing, Officer McMerty testified he was called to respond to a domestic disturbance. He testified he spoke with a neighbor who informed him that people in Mitzel's apartment had been yelling and that he had heard banging noises in the apartment. He testified he knocked on Mitzel's door and explained he was there to investigate a domestic disturbance. He testified that he asked whether Mitzel minded if he came inside and that Mitzel let him in. He testified Mitzel said that he was arguing with his girlfriend and that both of them were all right. He testified Mitzel asked him whether he would like to talk to his girlfriend, and he said he would. He testified that Mitzel began walking to the back bedroom and that when he took a step, Mitzel said, "I'll go get her." He testified he told Mitzel, "For my safety going back in the bedroom where there has been a domestic I don't know what's back there. I'll come with you." He testified that Mitzel shrugged and began walking toward the back bedroom.

[¶ 4] The officer testified that as he was walking toward the bedroom, he detected the odor of marijuana. He stated that when Mitzel opened the bedroom door, the odor of marijuana was strong and distinguishable. The officer testified that a female in the room yelled, "You can't be here!" He testified that the bedroom door was slammed shut and that he pushed the door back open and told the girl to come out. He testified that he instructed Mitzel and the girl to go with Officer Stugelmeyer. He testified he did a quick check for people and returned to the living room.

[¶ 5] The officer testified that he told Mitzel he believed there was marijuana in

the back bedroom. He testified Mitzel admitted to smoking marijuana, and he asked Mitzel for consent to search the bedroom, but Mitzel denied the request. He testified that he left to apply for a search warrant after Officer Stugelmeyer arrested Mitzel and the girl for possession of marijuana. The officer testified he did not obtain a search warrant, because he was informed that Mitzel had decided to consent to a search.

[¶ 6] Officer Kenan Kaizer, a detective with the Bismarck Police Department, testified that he volunteered to assist with the case and that he went to Mitzel's apartment. He arrived after Officer McMerty had left to obtain a search warrant. Officer Kaizer testified he explained to Mitzel and the girl that "it might be awhile; that the State's Attorney was busy, and that we were trying to contact someone else to issue the Search Warrant for us, but we were just going to have to wait." He testified that Mitzel said he did not want to wait any longer and that Mitzel and the girl gave consent for a search. He testified he went through a written consent form with them, "had them both read it and sign it, then went through their Miranda rights, had them read that and sign that form also."

[¶ 7] On August 11, 2003, an order denying Mitzel's motion to suppress was filed. On August 13, 2003, Mitzel entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2) to amended charges, reserving the right to appeal the denial of his motion to suppress. On November 17, 2003, Mitzel was convicted of possession of marijuana with intent to deliver and possession of drug paraphernalia.

[¶ 8] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const.

art. VI, §§ 2 and 6, and N.D.C.C. §§ 29–01–12 and 29–28–06.

## II

■ [¶ 9] Mitzel argues the district court erred in denying his motion to suppress evidence found during the search of his apartment, because he did not give his consent for police to follow him to the rear of his apartment, because there were no exigent circumstances to justify the search, and because his later consent to a search was obtained in violation of his *Miranda* rights and was involuntary.

[¶ 10] A trial court's findings of fact in preliminary proceedings of a criminal case will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence.

■ *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994); *State v. Bollingberg,* 2004 ND 30, ¶ 13, 674 N.W.2d 281 (motion to suppress). This standard recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility, and great deference is given to the district court in suppression matters. *State v. Matthews,* 2003 ND 108, ¶ 8, 665 N.W.2d 28. Questions of law are fully reviewable on appeal. *State v. Ova,* 539 N.W.2d 857, 858 (N.D.1995); *Bollingberg,* at ¶ 13. Whether a finding of fact meets a legal standard is a question of law. *City of Jamestown v. Dardis,* 2000 ND 186, ¶ 7, 618 N.W.2d 495.

■ [¶ 11] The Fourth Amendment provides protection from unreasonable searches and seizures. U.S. Const. amend. IV. A search and seizure has occurred if a person has a reasonable expectation of privacy in an area searched or in

materials seized. *Matthews,* 2003 ND 108, ¶ 10, 665 N.W.2d 28. Warrantless searches inside a person's home are presumptively unreasonable. *Id.* (citing *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)). Searches inside a home are not unreasonable, however, if the search falls under one of the exceptions to the search warrant requirement. *Id.*

■ [¶ 12] When no exception exists, the evidence obtained must be suppressed as inadmissible under the exclusionary rule. *State v. Gregg,* 2000 ND 154, ¶ 23, 615 N.W.2d 515. It is the State's burden to show that a warrantless search falls within an exception to the warrant requirement. *State v. Avila,* 1997 ND 142, ¶ 16, 566 N.W.2d 410.

## A

■ [¶ 13] One of the exceptions to a warrantless search is consent. *State v. DeCoteau,* 1999 ND 77, ¶ 9, 592 N.W.2d 579. The existence of consent is a question of fact to be determined from the totality of the circumstances. *United States v. Patacchia,* 602 F.2d 218, 219 (9th Cir.1979); *United States v. Miller,* 589 F.2d 1117, 1130 (1st Cir.1978). The scope of consent is measured objectively by what a reasonable person would have understood by the exchange between the police and the suspect. *State v. Guthmiller,* 2004 ND 100, ¶ 5, 680 N.W.2d 235.

[¶ 14] In cases involving consent to enter a home, we have held, " 'to sustain a finding of consent, the State must show affirmative conduct by the person alleged to have consented that is consistent with the giving of consent, rather than merely showing that the person took no affirmative actions to stop the police....' " *City of Jamestown v. Dardis,* 2000 ND 186, ¶ 11, 618 N.W.2d 495 (quoting *DeCoteau,*

1999 ND 77, ¶ 11, 592 N.W.2d 579 (citation omitted)). Outside the context of consent to enter a home, it has been found that if police do not request consent, expressly or impliedly, consent cannot reasonably be implied from silence and failure to object. *See United States v. Jaras*, 86 F.3d 383, 390–91 (5th Cir.1996) (consent to search suitcase could not be implied). Although it has been held that consent cannot be implied from silence or failure to object, consent can be implied. Judge James Cissell, *Federal Criminal Trials* § 2–5(h) (6th ed. 2003). Failing to object to the continuation of a consent search makes the continued search objectively reasonable. 1 William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 9.3 (2d ed. 2004); *United States v. Alcantar*, 271 F.3d 731, 738 (8th Cir.2001).

[¶ 15] In this case, it is undisputed that the police were invited in by the defendant. The trial court found that when the defendant went to the back bedroom, the police officer advised him that he would need to accompany him if he was going to another part of the house. The trial court found that "the officer could follow the defendant in the absence of an express statement denying him that privilege by the defendant. The defendant in this case had voluntarily let the officer in."

[¶ 16] Although the findings of fact are supported by the evidence, the district court has misapplied the law, because these findings are insufficient to show consent. *See Diemert v. Johnson*, 299 N.W.2d 546, 548 (N.D.1980) (holding that the Court is not bound by findings based on an erroneous conception of law). This is not a case in which Mitzel failed to object to the officer's following him down the hall. *But see State v. Perseke*, 1999 Minn.App. Lexis 550 *3 (finding voluntary consent where appellant allowed police officer to follow him downstairs). This also

is not a case in which the officer requested consent. In this case, the officer began following Mitzel, and Mitzel said, "I'll go get her." The officer replied, "For my safety going back in the bedroom where there has been a domestic I don't know what's back there. I'll come with you." The officer did not ask for Mitzel's consent; he made a statement of authority. In response to the officer's statement, Mitzel "kind of shrugged and started walking back to the bedroom." Mere acquiescence to police authority is insufficient to show consent. 1 W.E. Ringel, *Searches & Seizures, Arrests and Confessions* § 9.3 (2d ed. 2004); *see United States v. Jaras*, 86 F.3d 383, 390 (5th Cir.1996).

[¶ 17] Even if the officer's statement could be interpreted as asking Mitzel for consent to search, a reasonable person would not believe Mitzel's conduct showed consent. In determining whether a suspect has consented to an officer's request to search, the question is not subjective but is whether a reasonable person would believe the conduct showed consent. 1 W.E. Ringel, *Searches & Seizures, Arrests and Confessions* § 9.3 (2d ed. 2004). Consent should not be lightly inferred. *People v. Cameron*, 73 Misc.2d 790, 342 N.Y.S.2d 773, 782 (1973); *United States v. Patacchia*, 602 F.2d 218, 219 (9th Cir. 1979). Consent must be proven by clear and positive testimony. *United States v. Scott*, 578 F.2d 1186, 1188 (6th Cir.1978); *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977). Consent must be unequivocal. *Cameron*, at 784 (finding action of shrugging insufficient to constitute consent); *McCaleb*, at 721. A shrug is ambiguous; it can " 'express aloofness, indifference, or uncertainty.' " *People v. Raibley*, 338 Ill.App.3d 692, 273 Ill.Dec. 345, 788 N.E.2d 1221, 1230 (2003) (quoting *Merriam Webster's Collegiate Dictionary* 1084

(10th ed. 2000)). Even Officer McMerty interpreted the shrug to mean "whatever."

[¶ 18]   We conclude the district court's findings of fact are based on an erroneous conception of law and are therefore insufficient to constitute consent.

## B

[¶ 19]   Another exception to the warrant requirement is exigent circumstances, meaning an "emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *DeCoteau,* 1999 ND 77, ¶¶ 14–15, 592 N.W.2d 579 (citations omitted). We apply a de novo standard of review to determine whether the facts constitute exigent circumstances. *Id.* at ¶ 15. Mitzel argues that no exigent circumstances existed when the officer followed him through his apartment.

[¶ 20]   The district court concluded the officer acted appropriately under the circumstances. The district court stated:

> The officer was aware that shouting etc. had emanated from the premises and had no idea what was at the rear of the apartment. He was entitled to protect himself from what may be at the rear of the apartment once the defendant was out of his view. These are often explosive situations and one in which the officer had a right to protect himself. The defendant could have called out to the other occupant to come to the living room and he chose not to do so.

In *Fletcher v. Town of Clinton,* 196 F.3d 41, 50 (1st Cir.1999), the court stressed:

> On the spot reasonable judgments by officers about risks and dangers are protected. Deference to those judgments may be particularly warranted in domestic disputes. In those disputes, violence may be lurking and explode with little warning. Domestic violence victims may be intimidated or suffer from a dependence inherent in the abusive relationship. The signs of danger may be masked.

[¶ 21]   The court in *Fletcher* also stated that police must often make balanced choices. "Domestic violence situations require police to make particularly delicate and difficult judgments quickly." *Id.* The court, however, also recognized that "officers must respect basic freedoms guaranteed by the Fourth Amendment. A person's home is her sanctuary, not ordinarily to be entered by the police unless that entry is authorized by a warrant." *Id.*

[¶ 22]   Although domestic disputes can be explosive, there are insufficient specific facts in this case indicating that an immediate search of the apartment was warranted. In this case, the police received a call from a neighbor who reported banging and yelling coming from inside Mitzel's apartment. There was no disturbance in progress when the officers arrived, and Mitzel informed the police that he and his girlfriend had had a fight and that they were both fine. There was no testimony that Mitzel was trying to prevent the police from entering the apartment or that he was being evasive. There was no testimony that Mitzel had any violent tendencies, and there were no initial signs of intoxication. There was no testimony to indicate that Mitzel was not calm, and there was no evidence of an altercation, such as blood, bruising, or raw knuckles. Mitzel asked whether the officers wanted to talk to his girlfriend, and he went to get her. These circumstances are insufficient to show exigent circumstances. *See DeCoteau,* 1999 ND 77, ¶¶ 17–18, 592 N.W.2d 579 (no exigent circumstances found while police investigated a domestic situation); *see also Tamborino v. Superior*

*Court,* 41 Cal.3d 919, 226 Cal.Rptr. 868, 719 P.2d 242, 244 (1986) (officer justified in searching home for a potential victim when he observed a person wounded and bleeding and there had been a report of a robbery); *State v. Sailas,* 129 Idaho 432, 925 P.2d 1131 (Ct.App.1996) (exigent circumstances found when officers saw blood on a woman's hands and nose and the domestic disturbance continued in their presence); *State v. Wiedenheft,* 136 Idaho 14, 27 P.3d 873 (Ct.App.2001) (exigent circumstances found when a 911 call was received, police observed injuries, and person answering door was visibly upset); *People v. Mascarenas,* 972 P.2d 717 (Colo. Ct.App.1998) (exigent circumstances found when police observed injuries); *Fletcher v. Town of Clinton,* 196 F.3d 41 (1st Cir. 1999) (exigent circumstances found when there was a restraining order and prior conduct with alleged abuser); *State v. Greene,* 162 Ariz. 431, 784 P.2d 257 (1989) (exigent circumstances found when victim told the police that she had been beaten); *State v. Lynd,* 54 Wash.App. 18, 771 P.2d 770 (1989) (exigent circumstances found when there was a hang-up call to 911).

[¶ 23] Because the facts do not show an emergency requiring swift action to prevent imminent danger to life or property, exigent circumstances do not justify the search of Mitzel's apartment. Because no exceptions to a warrantless search apply, we conclude the officer's action in following Mitzel through his home constitutes an unlawful search and all evidence obtained from the warrantless search must be suppressed as inadmissible under the exclusionary rule. *See State v. Gregg,* 2000 ND 154, ¶ 23, 615 N.W.2d 515.

## C

[¶ 24] Mitzel also argues the district court erred in finding his subsequent consent to search was valid. He argues his consent to search was invalid because it was obtained in violation of his *Miranda* rights and was involuntary.

[¶ 25] Whether consent to search is voluntary is a question of fact. *United States v. Larson,* 978 F.2d 1021, 1023 (8th Cir.1992). A trial court must determine whether, under the totality of the circumstances, the consent was voluntary. *DeCoteau,* 1999 ND 77, ¶ 9, 592 N.W.2d 579. The government has the burden to prove that consent was voluntarily given. *United States v. McCaleb,* 552 F.2d 717, 720 (6th Cir.1977).

[¶ 26] When consent is the product of a free and unconstrained choice and not the product of duress or coercion, it is voluntary. *Larson,* 978 F.2d at 1023. To determine voluntariness, we focus on two elements: (1) the characteristics and condition of the accused at the time of the consent, and (2) the details of the setting in which the consent was obtained, with no one factor being determinative. *City of Fargo v. Ellison,* 2001 ND 175, ¶ 13, 635 N.W.2d 151; *see also State v. Guscette,* 2004 ND 71, ¶ 11, 678 N.W.2d 126.

[¶ 27] In deciding that Mitzel's consent was valid, the district court does not appear to have considered the totality of the circumstances. The district court, to the exclusion of all other factors, appears to have based its decision solely on the fact that Mitzel signed a consent as a result of having been informed that it would take a few hours to obtain a search warrant. The trial court's rationale for its finding was that it was satisfied Mitzel was aware of his right to wait until a search warrant had been secured.

[¶ 28] Before Mitzel consented to the search, without the benefit of a *Miranda* warning, he was told the officers "would" get a search warrant, but that it "might take awhile" and would be "time

consuming." Lack of a *Miranda* warning, by itself, does not invalidate a consent to search. *United States v. Lee*, 356 F.3d 831, 834 (8th Cir.2003); *United States v. Newton*, 259 F.3d 964, 966–67 (8th Cir. 2001). Stating that a search warrant will be obtained is also insufficient to render consent involuntary. *See United States v. Bramble*, 894 F.Supp. 1384, 1392 (D.Haw. 1995) (consent to search was voluntary when officers said they would get a search warrant but did not claim to have a search warrant or to be able to obtain one immediately); *see also United States v. Miller*, 589 F.2d 1117, 1132 n. 13 (1st Cir.1978) (consent is not made involuntary by an assertion that a warrant would be obtained if no consent is given to search).

[¶ 29] When Mitzel consented to the search, he had been arrested and was in handcuffs. Because all of the evidence obtained from the initial search must be excluded under the exclusionary rule, there was no basis for his arrest. The mere fact that a person has been arrested in violation of his constitutional rights casts grave doubt upon the voluntariness of a subsequent consent. *United States v. McCaleb*, 552 F.2d 717, 721 (6th Cir.1977); *United States v. Bazinet*, 462 F.2d 982, 989 (8th Cir.1972); *but see United States v. Watson*, 423 U.S. 411, 424–25, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (consent to search valid while defendant in custody after lawful arrest). There were also two officers present when he consented, and Mitzel was not given his *Miranda* warning until after he had consented to the search. *Miranda* warnings are a factor to consider under the voluntariness test. *United States v. Payne*, 119 F.3d 637, 643–44 (8th Cir.1997). *Miranda* warning cannot support voluntariness of consent when it is given after the consent. *United States v. Perez–Lopez*, 348 F.3d 839, 847 (9th Cir.2003).

### III

[¶ 30] Although the trial court found Mitzel's written consent to search was valid, that determination was based upon an incorrect application of the law. We therefore reverse the criminal judgment, vacate the order denying the motion to suppress, and remand for a determination of whether Mitzel's consent was voluntary under the totality of the circumstances. If, applying the law set forth above, the trial court determines Mitzel's consent was involuntary, Mitzel must be permitted to withdraw his guilty plea.

[¶ 31] WILLIAM A. NEUMANN, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 32] The majority opinion has outlined the facts and the applicable law. Because I do not agree the trial court misapplied the law to the facts, I respectfully dissent to Section II B of the majority opinion and the reversal of the judgment of conviction. Under the circumstances of this case I believe exigent circumstances justified the actions of the police officers as an exception to the requirement of a search warrant under the Fourth Amendment of the United States Constitution. I would therefore affirm the order denying the suppression of the evidence and the judgment of conviction.

[¶ 33] There is no doubt that Mitzel invited the police into the home. For purposes of this dissent I agree with the majority that once in the home, Mitzel's subsequent actions were not consent for the officer to accompany Mitzel to the back bedroom. But, the facts of this case are significantly different than those in *State v. DeCoteau*, 1999 ND 77, 592 N.W.2d 579. First, as has been noted, the police were

invited into the home. In *DeCoteau*, the issue was whether or not the police were justified in entering the home. We held they were not. Although an invitation or consent to enter a home does not alone entitle the police to roam at will through the entire house, once inside the home, it seems to me the potential danger to the officers is considerably greater than when the officers were outside or in a common hall. Officer McMerty's testimony that "For my safety going back in the bedroom where there has been a domestic I don't know what's back there. I'll come with you" indicates as much. While Mitzel's silence may not have been consent to the officer to accompany him, that consent is not necessary under these facts.

[¶ 34] The other significant fact which distinguishes this from *DeCoteau* is that in *DeCoteau* both adults were outside the home when the police arrived. The woman assured the police there was nothing wrong and asked the police to leave. The police saw a broken window, were told by a child standing in the street that he heard the sound of breaking glass. The officer's justification for entering the home was the officer wanted to see if the children were all right although it is not clear from the opinion there were children in the home.

[¶ 35] Here, the woman with whom Mitzel was arguing was not outside the home nor visibly present in the home, although Mitzel's statements to the officer and subsequent actions clearly indicated she was present.

[¶ 36] It is well known that law enforcement officers may be in considerable danger when called to the scene of domestic violence. Here, the officer was invited into the home and told by the defendant he had been arguing with his girlfriend, who was not visible in the home. Out of concern for the woman and his own protection, I believe the officer was justified under the exigent circumstances exception to the warrant requirement in the Fourth Amendment in following the defendant to the rear of the home where he smelled the marijuana. As a result, I believe the ensuing arrest was not illegal and that the subsequent consent to search the home was voluntary and therefore valid under these circumstances.

[¶ 37] MARY MUEHLEN MARING, J., concurs.